IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

**RYAN LEE HAMRICK**,                            Case No. 5:13-CV-650

      Petitioner,

                                Judge DAN AARON POLSTER

      v.

                                REPORT AND RECOMMENDATION

**TERRY TIBBALS,**

      Respondent.                            Magistrate Judge James R. Knepp II

### INTRODUCTION

This action is initiated by *pro se* Petitioner Ryan Lee Hamrick, (hereafter "Petitioner") a prisoner in state custody who filed a petition seeking a writ of habeas corpus under 28 U.S.C. § 2254. (Doc. 1). Respondent Terry Tibbals, Warden, ("Respondent") filed a Return of Writ (Doc. 10), Petitioner filed a Reply (Doc. 11), and Respondent filed a Sur-Reply. (Doc. 12). This matter has been referred to the undersigned for a Report and Recommendation pursuant to Local Rule 72.2(b)(2) (non-document entry dated October 22, 2013). For the reasons discussed below, the undersigned recommends the Petition be dismissed.

### FACTUAL BACKGROUND

For purposes of habeas corpus review of state court decisions, "the state court's factual findings are presumed correct unless rebutted by the habeas petitioner by clear and convincing evidence." *Moore v. Mitchell*, 708 F.3d 760, 775 (6th Cir. 2013); 28 U.S.C. § 2254(e)(1). "This presumption of correctness applies even to factual findings made by a state court of appeals

based on the state trial record." *Mitzel v. Tate*, 267 F.3d 524, 530 (6th Cir. 2001). The Fifth

District Court of Appeals set forth the following facts:

> At trial, most of the State's physical evidence was undisputed by appellant. On November 19, 2009, Tillman's body was found in a creek beneath a bridge on Moore Avenue, just south of Sherrick Road, in Canton Township, by a township employee inspecting a previous dam removal project. The Stark County Coroner determined Tillman's death was caused by multiple gunshot wounds to the head, trunk and arm.

> Tillman was killed with a ten millimeter handgun, an uncommon weapon. Five shell casings were found at the scene along with Tillman's cell phone. The cell phone revealed text messages and calls between Tillman and a Jennifer McPherson. The police subsequently located McPherson in West Virginia and questioned her. She implicated appellant, also a resident of West Virginia, as the shooter. Appellant was arrested and initially denied knowledge of or involvement in the death of Tillman. Appellant subsequently admitted to shooting Tillman during an incident that occurred on November 15, 2009. McPherson also was present at the time. However, appellant and McPherson offered divergent versions of the events leading to Tillman's death.

McPherson's Version

> McPherson testified at trial that she knew Tillman through his cousin Jules Covington (also known as Boony), who lived in West Virginia. She had gone with Boony to visit family in Cleveland and met Tillman there. Tillman later traveled to West Virginia and stayed at McPherson's apartment. McPherson subsequently facilitated drug deals between Tillman and appellant in West Virginia.

> On November 14, 2009, appellant and McPherson drove to Cleveland and eventually picked up Tillman the next day. In Cleveland, Tillman obtained drugs for appellant and he drove back to West Virginia with Appellant and McPherson. Tillman (also known as Pork) was large of stature and sat in the front passenger seat while Appellant drove his father's red Mustang. McPherson sat in the back seat.

> McPherson testified they stopped at a Walmart in Akron, where "Chore Boy" cleaner and an arrow were purchased to smoke crack cocaine. Store surveillance cameras captured the red Mustang in the parking lot and appellant and Tillman together in Walmart.

> McPherson stated appellant smoked crack in the car prior to leaving the parking lot. They proceeded toward Canton via Interstate 77. McPherson stated appellant

2

got off the highway and drove to a back road and made her and Tillman get out of the car. Appellant dropped them off at a bridge and told them they couldn't go with him. He drove away but McPherson did not know where he went once he drove from sight. She and Tillman conversed about Christmas shopping and within a minute or two a gunshot rang out. Tillman told her not to get scared because he knew people in the area where they could go. Appellant drove back and stopped the car. McPherson testified she reached for the passenger door to get in but it was locked. Appellant exited the vehicle and shot Tillman two times. Tillman fell to the ground while holding on to McPherson's shirt and told her to run. Appellant came around the car. He proceeded to again shoot Tillman while McPherson ran away.

McPherson testified that appellant then drove after her. He told her to get in the car or he would shoot her. McPherson got back in the car. The two returned to West Virginia. McPherson stated that Tillman did not have a weapon or threaten her with harm at any time.

Hamrick's Version

Appellant testified on direct examination that he met Tillman through a friend in West Virginia. Appellant had driven a couple times to Cleveland to pick up or drop off Tillman. On November 14, 2009, he and McPherson drove to pick up Tillman in Cleveland, arriving about 1:00 a.m. The two slept in the car and then picked Tillman up around noon. Drugs were obtained from Tillman's uncle at a gas station. The group then started back to West Virginia. Appellant admitted to stopping at Walmart to get Chore Boy and the arrow. Appellant said it was Tillman's idea to stop in Canton to make another drug transaction. Appellant testified that Tillman told appellant to drop him and McPherson off and then go meet two men in a dark blue Malibu that would be parked up the street. Appellant was to give them some drugs and bring money back to Tillman.

Appellant drove up the street. He stated he saw the vehicle parked on the side of the road. He approached the vehicle with drugs in hand but two men got out of the vehicle and one man held a gun to his head. Appellant stated he tussled with the man. The man dropped the gun and appellant dropped the drugs. Appellant got back to his vehicle but the man shot at him. He drove away and went back to pick up McPherson because he felt she was his responsibility.

Appellant testified he felt terrified and set up by Tillman. He stated that Tillman looked surprised and shocked to see him come back. He got out of the car and ordered McPherson back in the car. He stated he pulled his weapon out because Tillman "just kept coming at me". He felt he had nowhere to go and feared for his life, so he shot Tillman, a much larger man than Appellant. Appellant stated he had seen [Tillman] with a gun before, and on one previous occasion had thought

3

that Tillman was going to rob him. Appellant testified that he was very angry that Tillman had put him in that position.

In regards to McPherson, Appellant testified that he pulled up, she started walking to the vehicle, she wasn't running at the time and she did not seem frightened. She got in the car and they returned to West Virginia without saying anything.

On cross-examination, Appellant admitted to repeatedly shooting Tillman. He stated he took the loaded weapon with him on the trip. He admitted he originally lied to the police about knowing Tillman, his drug usage and stopping at Walmart. Appellant also admitted that his brother lives on Sherrick Road. Appellant stated he did not see Tillman with a weapon that day, nor did Tillman verbally threaten him. He also admitted to later throwing the murder weapon into a river.

When questioned specifically about McPherson, appellant stated she didn't appear to be in any immediate danger when he arrived back and that Tillman had not hurt or threatened her.

*State v. Hamrick*, 2012 WL 983193 (Ohio Ct. App.); (Exs. 1, 18, Doc. 10).

## STATE COURT CONVICTION

On December 31, 2009, the Stark County Grand Jury issued an indictment charging Petitioner with one count of murder in violation of Ohio Rev. Code § 2903.02(A) with a firearm specification under Rev. Code § 2941.145. (Ex. 2, Doc. 10). Said charges arose from the death of Demeris A. Tillman, 30 years of age, a resident of East Cleveland, Ohio. (Ex. 2, Doc. 10). At arraignment, Petitioner entered a plea of not guilty. (Ex. 3, Doc. 10).

Petitioner filed a motion to suppress on March 9, 2010, attempting to suppress statements made during his interrogation. (Ex. 4, Doc. 10). The court conducted a hearing on March 30, 2010, and denied Petitioner's motion. (Ex. 6, Doc. 10).

The case proceeded to trial on January 19, 2011, whereupon the jury found Petitioner guilty as charged in the indictment. (Ex. 7, Doc. 10). On January 28, 2011, Petitioner was sentenced to an aggregate term of eighteen years to life in prison. (Ex. 8, Doc. 10). On February

4

15, 2011, the court made a *nunc pro tunc* entry, correcting the judgment of conviction to reflect the date of deliberation from January 21, 2011, to January 24, 2011. (Ex. 13, Doc. 10).

### DIRECT APPEAL

Represented by new counsel, Petitioner filed a timely notice of appeal to the Fifth District Court of Appeals for Stark County, Ohio. (Ex. 15, Doc. 10). Petitioner presented three assignments of error at that time:

1. The trial court erred when it overruled the defendant's request to charge the jury on the law of defense of another as it pertained to the defense of Jennifer McPherson.

2. The trial court erred when it denied the defendant's request to charge the jury on the lesser offense of voluntary manslaughter.

3. The trial court's finding of guilty of murder was against the manifest weight of the evidence and was not supported by sufficient evidence.

(Ex. 16, Doc. 10).

The state filed its appellee brief on November 7, 2011. (Ex. 17, Doc. 10).

On March 5, 2012, the Fifth District Court of Appeals affirmed the trial court's judgment. (Ex. 18, Doc. 10). On March 19, 2012, the Court of Appeals made a *nunc pro tunc* entry stating "printer error paragraphs 8 & 11." (Ex. 19, Doc. 10).

On September 20, 2012, Petitioner filed *pro se* an untimely notice of direct appeal in the Ohio Supreme Court from the Fifth District's judgment. (Ex. 21, Doc. 10). Petitioner also filed a motion for leave to file delayed appeal the same day. (Ex. 22, Doc. 10). On November 7, 2012, the Ohio Supreme Court denied Petitioner leave to appeal and dismissed the case. (Ex. 23, Doc. 10).

5

## APPLICATION TO REOPEN UNDER APP. R. 26(B)

On February 13, 2013, Petitioner filed *pro se* a delayed application to reopen the direct appeal pursuant to Ohio App. R. 26(B). (Ex. 24, Doc. 10). In the application, Petitioner claimed appellate counsel had been constitutionally ineffective by failing to present the following assignments of error:

1. That Hamrick was denied a fair trial when the trial court disqualified Daniel Clevenger as an expert witness on the issue of deadly force; and

2. That trial counsel was constitutionally ineffective and denied Hamrick a fair trial when trial counsel failed to consult with defense expert Daniel Clevenger so as to ensure Clevenger was completely prepared for the trial court's hearing on permitting Clevenger to testify as an expert.

(Ex. 24, Doc. 10)

After the state filed a memorandum in opposition (Ex. 25, Doc. 10) and Petitioner filed a *pro se* reply (Ex. 26, Doc. 10), the Fifth District Court of Appeals for Stark County, Ohio, denied Petitioner's application to reopen (Ex. 27, Doc. 10).

Then, on June 24, 2013, Petitioner filed *pro se* a timely notice of appeal in the Ohio Supreme Court from the Fifth District's judgment regarding the application to reopen. (Ex. 29, Doc. 10). Petitioner raised the following four assignments of error:

1. The appellate court erred when it decided that the appellant failed to raise good cause for untimely filing of his App. R. 26(B) application.

2. The appellant was denied his constitutional right to effective assistance of appellant counsel as guaranteed under the Sixth and Fourteenth Amendments of the United States and the Ohio Constitution.

3. The trial court erred and abused its discretion to the prejudice of the appellant in disqualifying Daniel Clevenger as an expert witness on deadly force issues which denied the appellant his constitutional right to a fair trial.

6

4.      The appellant was denied his constitutional right to effective assistance of trial counsel and a fair trial when trial counsel fails to consult with the potential expert to ensure the witness was completely prepared for the hearing.

(Ex. 30, Doc. 10).

On September 25, 2013, the Ohio Supreme Court declined to accept jurisdiction of the appeal pursuant to Ohio Supreme Court Rule 7.08(B)(4). (Ex. 31, Doc. 10).

**FEDERAL HABEAS CORPUS**

On March 18, 2013, Petitioner filed *pro se* the instant Petition under 28 U.S.C. § 2254 for Writ of Habeas Corpus. Petitioner asserts the following grounds for relief:

**GROUND ONE**: The trial court plainly erred when it overruled the petitioner's request to instruct the jury on the law of defense of another, which is law applicable to the case made before the jury and resulted in the denial of his substantial constitutional rights.

**GROUND TWO**: The trial court plainly erred when it denied the petitioner's request to instruct the jury on the lesser offense of voluntary manslaughter.

**GROUND THREE**: The petitioner is denied his constitutional right to have his guilty proven beyond a reasonable doubt and his right to a fair trial when the jury verdicts are unsupported by sufficient evidence.

**GROUND FOUR:** The trial court plainly erred and/or abused its discretion to the prejudice of the petitioner, in disqualifying Daniel Clevenger as an expert witness on deadly force issues which denied the petitioner his constitutional right to a fair trial.

**GROUND FIVE**: The petitioner was denied his constitutional right to effective assistance of trial counsel and to a fair trial when trial counsel failed to consult with the potential expert to ensure he was completely prepared for the trial court's hearing.

(Doc. 1).

**JURISDICTIONAL ISSUES**

In determining whether to issue a habeas writ, the standards set forth in the Antiterrorism and Effective Death Penalty Act ("AEDPA") govern the district court's review of a state court decision. *French v. Jones*, 332 F.3d 430, 435-36 (6th Cir. 2003), *cert. denied*, 540 U.S. 1018 (2003); 28 U.S.C. § 2254. Before a reviewing court may decide a habeas writ on the merits, a petitioner must satisfy the one-year statute of limitations promulgated by AEDPA. *Allen v. Yukins*, 366 F.3d 396, 399 (6th Cir. 2004), *cert. denied*, 543 U.S. 865 (2004).

Here, it is undisputed that the Petition was timely filed. (Doc. 10, at 10-11).

**Procedural Default – Grounds One through Five**

Reasons of federalism and comity generally bar federal habeas corpus review of "contentions of federal law . . . not resolved on the merits in the state proceeding due to [the] failure to raise them there as required by state procedure." *Wainwright v. Sykes*, 433 U.S. 72, 87 (1977).

> When a petitioner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.

*Coleman v. Thompson*, 501 U.S. 722, 750 (1991).

If the state argues a petitioner has procedurally defaulted his claims, the court must conduct a four-step analysis to determine whether the petitioner has indeed defaulted and, if so, whether the procedural default may be excused:

> First, the federal court must determine whether there is a state procedural rule that is applicable to the petitioner's claim and whether the petitioner failed to comply with that rule. Second, the federal court must determine whether the state courts actually enforced the state procedural sanction – that is, whether the state courts

8

actually based their decisions on the procedural rule. Third, the federal court must consider whether the procedural rule is an adequate and independent state ground on which the state can rely to foreclose federal review of a federal constitutional claim. . . . Fourth, if the federal court answers the first three questions in the affirmative, it would not review the petitioner's procedurally defaulted claim unless the petitioner can show cause for not following the procedural rule and that failure to review the claim would result in prejudice or a miscarriage of justice.

*Williams v. Coyle*, 260 F.3d 684, 693 (6th Cir. 2001) (citing *Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986) (internal citations omitted)). For the following reasons, each of Petitioner's grounds for relief is procedurally defaulted.

Here, the applicable state rules are Ohio S.Ct.Prac.R. 7.01(A)(1)(a) and App. R. 26(B)(1). Relevant to grounds one through three, an appeal to the Ohio Supreme Court from a state appeals court judgment, to be considered timely, must be filed within 45 days of the appeals court judgment. Ohio S.Ct.Prac.R. 7.01(A)(1)(a). Regarding grounds four and five, Ohio App. R. 26(B)(1) requires an application to reopen be filed within 90 days of state appellate judgment.

Petitioner failed to comply with each rule. Indeed, Petitioner's 45-day window for direct appeal began running after the March 19, 2012, *nunc pro tunc* entry, but he did not file for delayed direct appeal until September 20, 2012, a period of 185 days. (Ex. 21, Doc. 10). The 90-day window for Petitioner's application to reopen also began on March 19, 2012, but Petitioner did not file that motion until February 13, 2013, a period of 331 days. (Ex. 24, Doc. 10). Both motions were far outside the 45 and 90 day respective requirements.

Concerning the second *Maupin* prong, the Ohio Supreme Court chose to enforce its 45-day filing rule for a timely appeal when it denied Petitioner's motion for leave to file delayed appeal. Ohio S.Ct.Prac.R. 7.01(A)(1)(a); (Ex. 23, Doc. 10). In addition, the state appeals court enforced its 90-day rule for an application to reopen when it denied Petitioner's untimely application to reopen. Ohio S.Ct.Prac.R. 7.01(A)(4); (Ex. 27, Doc. 10).

9

Denial of review based on the Supreme Court's 45-day timely appeal rule has been deemed an adequate and independent state ground to foreclose federal review. *Bonilla v. Hurley*, 370 F.3d 494, 497. Additionally, the enforcement of the state appeals court 90-day procedural bar also amounts to an adequate and independent state ground to foreclose review. *Scuba v. Brigano*, 527 F.3d 479, 488-89 (6th Cir. 2007). Therefore, the third *Maupin* factor is satisfied and Petitioner's grounds relief are procedurally defaulted unless he can demonstrate cause and prejudice.

Demonstrating "cause" requires a petitioner to "show that 'some objective factor external to the defense' prevented the petitioner's compliance with a state procedural rule." *Bonilla v. Hurley*, 370 F.3d 494, 498 (6th Cir. 2004) (quoting *Murray v. Carrier*, 477 U.S. 478, 488 (1986)). Demonstrating prejudice requires a petitioner to show "not merely that the errors at his trial created a *possibility* of prejudice, but that they worked to his *actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *U.S. v. Frady*, 456 U.S. 152, 170 (1982).

In extreme cases, when cause and prejudice cannot be shown, a federal habeas court may hear a defaulted constitutional claim if the petitioner shows his conviction is the result of a fundamental miscarriage of justice, i.e., that he is "actually innocent." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). In this regard, a petitioner must show it is more likely than not that no reasonable juror would have found him guilty beyond a reasonable doubt in light of new evidence. *Schlup v. Delo*, 513 U.S. 298 (1995).

Petitioner asserts the substantial denial of access to the law library demonstrates cause as to why his appeals were not timely. (Doc. 11, at 3). Indeed, prisoners have a fundamental constitutional right to meaningful access to courts to challenge alleged violations of their rights.

10

*Bounds v. Smith*, 430 U.S. 817, 824 (1977). Petitioner claims he had problems gaining access to the law library due to a new prison tier system which separated rule abiding inmates from those who did not follow prison regulations. (Doc. 11, at 5). Petitioner also claims he was unable to access the law library because library staff were on medical leave. (Doc. 11).

In response, Respondent produced the prison logs detailing all inmate requests to use the library during the disputed time period and library logs detailing hours the library was closed. These records indicate the prison library at Mansfield Correctional Institution was fully operational, exceeding its minimum hours of 112 hours each month. (Ex. B, Doc. 12). Even during the month the library was least available, June 2012, it was still available twenty hours above the minimum requirement. (Ex. B, Doc 12 at 4). Additionally, other library logs show Petitioner never filed a request to use the prison library during the relevant time period. (Ex. A, Doc. 12). Taken together, these exhibits discredit Petitioner's claim that Mansfield Correctional's new tier system prevented him from using the prison's law library.

Further, ineffective assistance of counsel may constitute cause for failing to properly present a claim before a state court. *Lungren v. Mitchell*, 440 F.3d 754, 766 (6th Cir. 2006). However, that claim only constitutes cause if it is not, in and of itself, procedurally defaulted as well. *Williams v. Anderson*, 460 F.3d 789, n.1 (6th Cir. 2006). Here, all five of Petitioner's habeas claims are procedurally defaulted and as such, his ineffective assistance of counsel claim cannot stand as cause for his failure to timely file.

Because Petitioner has not shown cause, the Court does not reach the issue of prejudice. *See*, *Barkley*, 240 F. Supp. 2d, at 714 ("When a petitioner fails to show cause 'for not asserting his ineffective assistance of appellate counsel claim properly in the Ohio courts, a federal court may not reach the merits of the *habeas* claim.'") (quoting *Coleman*, 244 F.3d at 540).

11

Last, Petitioner's procedural default is not excused under the "fundamental miscarriage of justice" exception. *Souter v. Jones*, 395 F.3d 577, 588-89 (6th Cir. 2005); *Schlup v. Delo*, 513 U.S. 298 (1995). To meet this standard, Petitioner would need to present new evidence of innocence which is so strong a reviewing court cannot have confidence in the outcome of the trial. *Schlup*, 513 U.S. at 327. New evidence may be "exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence – that was not presented at trial." *Id*. at 324. Here, Petitioner has simply not presented new evidence of innocence. *Id*.; *Lundgren v. Mitchell*, 440 F.3d 754, 765 (6th Cir. 2006).

## CONCLUSION AND RECOMMENDATION

For the above-stated reasons, the undersigned recommends the Court find grounds one through five procedurally defaulted. Further, because Petitioner has not shown cause or prejudice for the default, the Petition should be dismissed.

        s/James R. Knepp, II
        United States Magistrate Judge

ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen days of service of this notice. Failure to file objections within the specified time WAIVES the right to appeal the Magistrate Judge's recommendation. *See Thomas v. Arn*, 474 U.S. 140 (1985); *U.S. v. Walters*, 638 F.2d 947 (6th Cir. 1981).